NO. 24-20340

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ARTHUR LEE BURTON,

Petitioner,

v.

BOBBY LUMPKIN
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent.

**UNOPPOSED MOTION FOR LEAVE TO FILE EXCESS LENGTH
REPLY TO OPPOSITION TO MOTION FOR ORDER AUTHORIZING
THE DISTRICT COURT TO CONSIDER SECOND OR SUCCESSIVE
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2244**

**THIS IS A DEATH PENALTY CASE**

Dorsey & Whitney LLP
Kathryn A. Johnson
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for Petitioner Arthur Lee Burton*

Mr. Burton, through counsel Kathryn A. Johnson, respectfully requests that this Court grant him leave to (1) file a Reply to the Director's Opposition to Motion for Order Authorizing the District Court to Consider Second or Successive Petition for Writ of Habeas Corpus and (2) file an over-length reply of 3,897 words to permit Mr. Burton to fully respond to the arguments raised in Respondent's opposition.[1] As demonstrated by the Certificate of Conference, the Director is unopposed to this Motion.

Dated: August 5, 2024

Respectfully submitted,

*/s/ Kathryn A. Johnson*

**Kathryn A. Johnson**
State Bar No. 0390539*
johnson.kate@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600(main)
(612) 340-2868(facsimile)

*Attorneys for Petitioner Arthur Lee Burton*

---

[1] Fifth Circuit Rule 22 provides that motions for permission to file second or successive applications under Rule 28 U.S.C. §§ 2254 and 2255, and any responses, must conform to the length limitations of Fed. R. App. P. 32(a), which allows for 13,000 words for a principal brief and 6,500 words for a reply brief. Fed. R. App. P. 27 permits 2,600 words for a reply brief on a motion.

1

## CERTIFICATE OF COMPLIANCE

I certify that (1) this Motion and the attached Reply were prepared in 14-point Times New Roman font using Microsoft Word software; and (2) this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(a) because this Motion contains 149 words.

/s/ Kathryn A. Johnson
Kathryn A. Johnson

## CERTIFICATE OF CONFERENCE

I certify that on August 5, 2024, I conferred with Tomee Heining, counsel for Respondent, who stated that Respondent does not oppose this Motion.

/s/ Kathryn A. Johnson
Kathryn A. Johnson

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on August 5, 2024, which will serve counsel for Respondents.

*/s/ Kathryn A. Johnson*
Kathryn A. Johnson

NO. 24-20340

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ARTHUR LEE BURTON,

Petitioner,

v.

BOBBY LUMPKIN
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent.

**REPLY IN SUPPORT OF MOTION FOR ORDER AUTHORIZING
SECOND OR SUCCESSIVE HABEAS CORPUS APPLICATION**

**THIS IS A DEATH PENALTY CASE**

Dorsey & Whitney LLP
Kathryn A. Johnson
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600

*Attorneys for Petitioner Arthur Lee Burton*

# TABLE OF CONTENTS

I.    PRELIMINARY SUGGESTION TO STAY PROCEEDINGS PENDING RESOLUTION OF *LUMPKIN V. JOHNSON*, NO. 23-70002…….…....……1

II.   BURTON'S CLAIM WAS PREVIOUSLY UNAVAILABLE…..………....3

    A.   *Atkins* is retroactive and was unavailable to Mr. Burton until recent changes in the diagnostic criteria for intellectual disability and *Moore*…………………….…………………………………..…3

    B.   Alternatively, *Moore* itself is a retroactive new rule of substantive constitutional law, previously unavailable to Mr. Burton……………..6

        1.   *Moore* is a retroactive new rule……………..…………..………6

        2.   *Moore* was unavailable to Burton……………………....…..11

III.  ALTHOUGH NOT REQUIRED, MR. BURTON HAS MADE A PRIMA FACIE SHOWING OF INTELLECTUAL DISABILITY AND THAT THE TEXAS COURT OF CRIMINAL APPEALS UNREASONABLY APPLIED (OR FAILED TO APPLY) *MOORE* TO HIS *ATKINS* CLAIM. THE STATE'S ARGUMENTS TO THE CONTRARY ARE BASED ON A MISAPPLICATION OF CURRENT CLINICAL STANDARDS……..…..12

IV.   IF TIMELINESS IS TO BE CONSIDERED AT THE AUTHORIZATION STAGE, IT REQUIRES ONLY A PRIMA FACIE SHOWING………........15

# TABLE OF AUTHORITIES

*Bell v. Cockrell,*
    310 F.3d 330 (5th Cir. 2002)…………………………………...........…….3

*Ex parte Briseno*,
    135 S.W.3d 1 (Tex. Crim. App. 2004)………………………………………8

*In re Campbell*,
    750 F.3d 523 (5th Cir. 2014) ………………………………………...….16

*In re Cathey*,
    857 F.3d 221 (5th Cir. 2017) …………………...…………………….*passim*

*Edwards v. Vannoy*,
    593 U.S. 255 (2021)………………………………………...………………*passim*

*Fulks v. Watson*,
    4 F.4th 586 (7th Cir. 2021)……………………………………...……...8

*In re Halprin*,
    788 F. App'x 941 (5th Cir. 2019)…………………………………………5

*In re Johnson*,
    935 F.3d 284 (5th Cir. 2019)…………………………………...……...*passim*

*Lumpkin v. Johnson*,
    No. 23-70002………………………………………………………………….*passim*

*Ex parte Milam*,
    No. WR-79,322-04 (Tex. Crim. App. July 31, 2024)……………...……15

*In re Milam*,
    838 F. App'x 796 (5th Cir. 2020) ………………………...……………9

*Montgomery v. Louisiana*,
    577 U.S. 190 (2016)…...…………………………………….…………...…8

*Moore v. Texas*,
581 U.S. 1 (2017) (*Moore I*) …………..……..…………………….*passim*

*Moore v. Texas*,
586 U.S. 133 (2019) (*Moore II*)………………………………..…..*passim*

*Penry v. Lynaugh*,
492 U.S. 302 (1989) ………………………………...……………..8, 11

*Saffle v. Parks*,
494 U.S. 484 (1990) …………………………...………………..10

*Schriro v. Summerlin*,
542 U.S. 348 (2004) ……………………………...……………7

*Shoop v. Hill*,
586 U.S. 45 (2019)……..……………………………..……………*passim*

*Smith v. Comm'r, Alabama Dep't of Corr.*,
924 F.3d 1330 (11th Cir. 2019)…………………………...………9

*In re Soliz*,
938 F.3d 200 (5th Cir. 2019)…………………………...…………5

*In re Sparks*,
939 F.3d 630 (5th Cir. 2019)…………………………...…………5

*Teague v. Lane*,
489 U.S. 288 (1989) …………………………………...…………7, 9

*Tyler v. Cain*,
533 U.S. 656 (2001) ……………………………………...………..10

*Weathers v. Davis*,
915 F.3d 1025 (5th Cir. 2019)…………………………………...………..6

*Williams v. Kelley*,
858 F.3d 464 (8th Cir. 2017) …………………………………....…..9

**Statutes**

28 U.S.C. § 2244………………………...………………………..….…*passim*

28 U.S.C. §2254………………………...………………………..……….*passim*

## I. PRELIMINARY SUGGESTION TO STAY PROCEEDINGS PENDING RESOLUTION OF *LUMPKIN V. JOHNSON*, NO. 23-70002.

A dispositive gateway question in this case is currently pending in a (rare) certified-interlocutory appeal in this Court, *Lumpkin v. Johnson*, No. 23-70002. *Lumpkin v. Johnson* concerns authorized successive federal habeas litigation in the same federal district in which Mr. Burton seeks to file his successive petition. *Lumpkin v. Johnson* has not only been evidentiarily developed since this Court authorized Johnson's successive petition; it has also been fully briefed, and oral argument is scheduled for November, 2024. Although Mr. Burton has made a prima facie showing that his intellectual disability claim was previously unavailable to him, should this Court have any doubt as to whether the claim satisfies 28 U.S.C. § 2244(b)(2)(A), it should stay these proceedings pending a decision in that case.

Pending in *Lumpkin v. Johnson* is the State's certified question whether *In re Cathey*, 857 F.3d 221, 232 (5th Cir. 2017), and *In re Johnson*, 935 F.3d 284 (5th Cir. 2019), are unlawful "judicially created exception[s] to the general prohibition against successive petitions embodied in 28 U.S.C. § 2244(b)." No. 23-70002, Doc. 19-1 at 3 (Brief of Respondent-Appellant).[1] Johnson and Burton both rely on *In re*

---

[1] The State also argues in *Lumpkin v. Johnson* that the District Court should not have equitably tolled the statute of limitations due to a lack of diligence by Mr. Johnson. The State makes a similar argument in opposition to Mr. Burton's pending motion, however that fact-bound question would require evidentiary development as occurred in *Johnson*; and accordingly is not statutorily relevant to the § 2244(b)(3)(C) analysis. *See* Mr. Burton's pending Motion at 25-29.

*Cathey* and *In re Johnson* to bring *Atkins* claims that were previously legally unavailable to them (under 28 U.S.C. § 2244(b)(2)(a)), and argue that publication of the DSM-5 effected a change in the legal criteria for establishing their intellectual disabilities. *In re Johnson* held that, as a prima facie matter, an *Atkins* claim can be legally unavailable until "changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." 935 F.3d at 294. This Court found that Johnson made that prima facie showing, *id.*, and Mr. Burton— whose case is materially indistinguishable from Johnson's—makes precisely the same prima facie showing.

Now that the parties in *Johnson* have developed an evidentiary record, the State has raised in *Lumpkin v. Johnson* a mixed question of law and fact beyond this Court's initial prima facie finding: whether Johnson's *Atkins* claim was not unavailable to him after all. The difference in postures between Burton's Motion and *Lumpkin v. Johnson* is significant. Mr. Burton's Motion may be held *only* to a prima facie standard, which this Court in *In re Johnson* already found was met in substantially-identical circumstances. *Lumpkin v. Johnson*, however, requires this Court to go beyond a prima facie analysis, with the benefit of an evidentiary record. If this Court were in the meantime to find that Burton—who is identically-situated

to how Johnson was at this threshold stage—has *not* made a prima facie showing,[2] it would prematurely short-circuit the thoroughly-briefed, fully-developed litigation now pending in *Lumpkin v. Johnson.*

Mr. Burton accordingly suggests that this Court stay the current proceedings pending resolution of *Lumpkin v. Johnson*.

## II.     BURTON'S CLAIM WAS PREVIOUSLY UNAVAILABLE.

### A. *Atkins* is retroactive and was unavailable to Mr. Burton until recent changes in the diagnostic criteria for intellectual disability and *Moore*.

*Atkins* is a retroactive constitutional rule. *Bell v. Cockrell*, 310 F.3d 330, 332 (5th Cir. 2002). Yet, purely because *Atkins* was decided before Mr. Burton filed his initial federal  habeas  application, the State argues that it was not "unavailable" under § 2244(b)(2)(a). That is incorrect.

Indeed, the State acknowledges—as it must—that under this Court's precedents, *Atkins*'s mere publication date did not render its ruling available to every litigant. In its opposition to Mr. Burton's motion for authorization, the State cites *In re Cathey*, 857 F.3d 221 (5th Cir. 2017) and *In re Johnson*, 935 F.3d 284 (5th Cir. 2019)[3] for the rule that an *Atkins* claim may be "previously unavailable" under § 2244(b)(2)(A) until a "change in diagnostic criteria—and subsequent change in the

---

[2] A prima facie showing is "simply a sufficient showing of possible merit," and if that standard is met then this Court "must grant the filing." *In re Cathey*, 857 F.3d at 226-27 (citing cases).

[3] As noted *supra,* the same case is currently pending on interlocutory review.

legal framework for reviewing Atkins claims" make the claim have some "possible merit." State's Opposition, at 19. On this point, the State is correct. As the Fifth Circuit explained in *In re Johnson*, "it is correct to equate legal availability with changes in the standards for psychiatric evaluation of the key intellectual disability factual issues raised by *Atkins*." 935 F.3d at 294.

The State nonetheless argues that *In re Johnson* "stands in stark contrast" to Mr. Burton's case because Mr. Burton's claim "rests entirely on an 'reassessment'" of his mental abilities. Opposition, at 19-20. The State mischaracterizes Mr. Burton's arguments. Mr. Burton expressly argued in his motion for authorization that—just like Johnson—his intellectual disability claim was not available until the clinical standards underwent significant changes, including deemphasizing IQ scores and requiring adjustment of scores to account for factors such as the Flynn Effect. *See* Motion for Authorization at 17-21 (discussing the changed intellectual disability criteria in the DSM-5, and laying out a prima facie factual basis for why that change rendered Mr. Burton's *Atkins* claim available for the first time).

Thus, the authorization analyses in *In re Johnson* and in Mr. Burton's case are indistinguishable. The rule of orderliness, therefore, in addition to the merits of Burton's Motion, requires authorization of his *Atkins* claim.[4]

---

[4] *See Vaughan v. Anderson Reg'l Med. Ctr.,* 849 F.3d 588, 591 (5th Cir. 2017) (under the rule of orderliness, "a panel may not overturn a controlling precedent absent an intervening change in law,

Similarly, Burton's Eighth Amendment intellectual disability claim would have been without merit prior to *Moore v. Texas*, 581 U.S. 1 (2017) (*Moore I*), because of a then-applicable standard used by Texas state and federal courts at the time. *In re Cathey*, 857 F.3d at 231 ("whether [applicant] was intellectually disabled for *Atkins* purposes was, and is, to be informed by Texas law"). Under that standard, Burton did not have a viable claim, just as Moore himself did not. *Moore v. Texas*, 586 U.S. 133, 136-38 (2019) (*Moore II*). *Moore* struck down that standard, however, and now Burton can meet the "three core elements" of the clinical *and* legal definition of intellectual disability. *Moore I*, 581 U.S. at 7.

*Moore* thus "removed a clear barrier to the claim." *In re Soliz*, 938 F.3d 200, 203 (5th Cir. 2019) (discussing *In re Johnson*, 935 F.3d 284). *See also In re Halprin*, 788 F. App'x 941 (5th Cir. 2019) ("altered the legal standards for granting relief on *Atkins* intellectual disability claims"). Until *Moore* removed that insurmountable barrier, *Atkins* was unavailable to Burton.[5]

---

such as by a statutory amendment, or the Supreme Court, or our en banc court.").

[5] The State points to *In re Sparks*, 939 F.3d 630, 632 (5th Cir. 2019), as an example of this Court "denying authorization on a new *Atkins* claim relying on *Moore I*." Opposition, at 15-16. *Sparks* brought to this Court a set of circumstances very different from Mr. Burton's, however. As this Court ultimately held in *Sparks*, Sparks did not present prima facie evidence of intellectual disability; and he differed from the petitions in *In re Cathey* and *In re Johnson* because he "had proceedings pending in this court and the state courts throughout the evolution of the Supreme Court's approach to Texas's application of *Atkins* and when the DSM-5 was published." 939 F.3d at 633. None of that is true of Mr. Burton.

**B. Alternatively, *Moore* itself is a retroactive new rule of substantive constitutional law, previously unavailable to Mr. Burton.**

**1. *Moore* is a retroactive new rule.**

*Atkins* prohibited the execution of intellectually disabled persons, but–as the State agrees–it did not decide *who* would qualify as intellectually disabled. *Atkins*, 536 U.S. at 317; *Moore I*, 581 U.S. at 27 (Roberts, J., dissenting); *Shoop v. Hill*, 586 U.S. 45, 49 (2019). *Moore* did. *Moore* directed states to use current medical standards in defining intellectual disability. *Moore I*, 581 U.S. at 20. This was a new holding not previously dictated by *Atkins*. *Shoop*, 586 U.S. at 50 (rejecting the argument that "the holding in *Moore* was merely an application of what was clearly established by *Atkins*") (internal citation and quotation marks omitted).

Despite having lost an identical argument in *In re Johnson* in this Court, the State tries again to rely on *Shoop* to argue that *Moore* is not new. Opposition at 12. But *Shoop* clearly recognized *Moore*'s newness, by holding that state courts could not be expected to anticipate *Moore* from prior precedent at all. *Shoop*, 586 U.S. at 46 ("The Court of Appeals' reliance on Moore was plainly improper under §2254(d)(1), and we therefore vacate that decision and remand so that Hill's claim regarding intellectual disability can be evaluated based solely on holdings of this Court that were clearly established at the relevant time.").[6] In *In re Johnson*, this

---

[6] The State also cites *Weathers v. Davis*, 915 F.3d 1025, 1027 (5th Cir. 2019), for the same proposition. Opposition at 16. But, exactly as with *Shoop*, *Weathers* concerned only Section

Court flatly rejected the State's attempt to conflate Section 2254(d)(1)'s relitigation bar with Section 2244(b)(2)(A)'s retroactivity requirement. *In re Johnson*, 935 F.3d at 293 (*Shoop* "concerned the relitigation bar of Section 2254(d)(1), and it did not overrule *Cathey*, which concerned a prima facie showing under Section 2244."). Precisely because *Moore* could not be anticipated from prior precedent, it is a new rule. *Teague v. Lane,* 489 U.S. 288, 301 (1989) (plurality) ("[A] case announces a new rule if the result was not dictated by precedent[.]").

The new rule in *Moore* is retroactive because it is a substantive Eighth Amendment holding. The State asserts, with neither authority nor analysis, that *Moore* created a procedural rule only. But a procedural rule alters "only the manner of determining the defendant's culpability." *Edwards v. Vannoy*, 593 U.S. 255, 276 (2021). A substantive rule, in contrast, "alter[s] the range of conduct or the class of persons that the law punishes." *Id*. (internal quotations omitted). While the former is not retroactive, the latter most certainly is.

*Moore* meets the definition of a substantive rule whole cloth: it substantively "alters . . . the class of persons that the law punishes[,]" *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004), by excluding a class of persons from capital punishment: Mr. Burton's class. It prohibits capital punishment for Mr. Burton's "class of defendants

---

2254(d)(1), and not Section 2244. *Id*. at 1027-28 (neither *Moore* nor *Hall* were "clearly established law" before they were decided).

because of their status[.]" *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *overruled on other grounds by Atkins*, 536 U.S. 304 (2002)). It moved capital punishment "beyond the State's power to impose" on Mr. Burton and his class. *Montgomery v. Louisiana*, 577 U.S. 190, 201 (2016). It is therefore substantive, not procedural; and thus applies retroactively to Mr. Burton because otherwise he "faces a punishment that the law cannot impose on him." *Summerlin*, 542 U.S. at 352.

The State suggests that a national consensus has formed that *Moore* is not retroactive. Opposition at 16-17. All it cites, however, are two unpublished panel decisions from the Fourth and Sixth Circuits, and distinguishable cases arising in states that never used anything close to the unconstitutional *Briseno* factors. *See Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004). Pre-*Moore* Texas caselaw was simply different from other states' *Atkins* requirements, in that *Briseno* alone governed the inquiry and truly made *Atkins* inaccessible to defendants like Burton. In contrast, as explained in two of the three published cases cited by the State, other states' pre-*Moore Atkins* standards did not truly preclude *Atkins* relief to persons in Mr. Burton's situation. *Fulks v. Watson*, 4 F.4th 586, 593 (7th Cir. 2021) ("Our point with all of this is to say that we are aware of no Supreme Court or Fourth Circuit case on the books at the time of Fulks's § 2255 petition that would have foreclosed him from raising an arguable *Atkins* claim. In the end, then, we are unable to identify any structural defect in § 2255 that rendered it an inadequate or ineffective device to

challenge his capital sentence. The consequence is that Fulks cannot use § 2241 to claim for the first time that he is ineligible for the death penalty under Atkins."); *Williams v. Kelley*, 858 F.3d 464, 474 (8th Cir. 2017) ("The recently decided *Moore v. Texas* concerned the state court's use of out-of-date medical guides, rather than contemporary guides reflecting the medical community's consensus, to determine whether the defendant was intellectually disabled. [] But [the Petitioner] does not allege that Arkansas uses out-of-date medical guides or otherwise fails to follow contemporary medical standards.") (internal quotation and citation omitted). The third case cited by the State, *Smith v. Comm'r, Alabama Dep't of Corr.*, 924 F.3d 1330(11th Cir. 2019), found *Moore* was not retroactive because it believed it was a procedural—rather than substantive—rule.

This Circuit has not had occasion to determine whether *Moore* is retroactive. *See e.g. In re Milam*, 838 F. App'x 796, 798 (5th Cir. 2020) (unpub. *per curiam*) (not reaching question of *Moore*'s retroactivity because it would not have been "new" to Milam either way – *Moore* was decided during the pendency of Milam's federal habeas petition). The Supreme Court's action in *Moore* itself makes clear, however, that this rule does apply retroactively. *Moore II*, 586 U.S. 133 (applying *Moore* retroactively to a case on collateral review); *see also Teague,* 489 U.S. at 300 (where new rule applied to one defendant on collateral review, "evenhanded justice requires that it be applied retroactively to all who are similarly situated.").

The *Moore* Court's retroactive action was plainly required by settled precedent: new substantive rules are retroactive to cases on collateral review. *Edwards*, *supra.* The same should happen here. *Moore* applies retroactively to Burton's claim on collateral review.

Because the Supreme Court decided *Moore* after the conclusion of Mr. Burton's initial federal habeas litigation, however, the only statutory path for him to access this retroactive Eighth Amendment holding is § 2244(b)(2)(A). Under the State's opposing argument, *Moore*'s obvious retroactivity would still not satisfy this statute, however, because the United States Supreme Court did not explicitly articulate it in *Moore I* or *Moore II.*

The statute does not require an explicit articulation of retroactivity, however; it requires only that the Supreme Court has "held" as much. § 2244(b)(2)(A) ("made retroactive to cases on collateral review by the Supreme Court"); *Tyler*, 533 U.S. at 662 ("Based on the plain meaning of the text read as a whole, we conclude that 'made' means 'held' . . ."). The Supreme Court did just that in *Moore* itself: retroactivity was a necessary component of both *Moore I* and *Moore II*, because Moore himself was seeking collateral review. Retroactivity was the *ratio decidendi* to the holding. *See Saffle v. Parks*, 494 U.S. 484, 487-88 & 494 (1990) ("As he is before us on collateral review, we must first determine whether the relief sought would create a new rule . . . . If so, we will neither announce nor apply the new rule

sought by Parks unless it would fall into . . . [a] narrow exception[:] . . . . if the rule

. . . addresses a substantive categorical guarantee accorded by the Constitution, such

as a rule prohibiting a certain category of punishment for a class of defendants

because of their status[.]") (internal quotations omitted), modified in non-pertinent

part by *Edwards v. Vannoy*, 593 U.S. 255.

Even if *Moore I* and *Moore II* do not qualify as "holdings" that the rule

announced therein is retroactive, *Tyler* itself recognized an exception to a single

"holding" of retroactivity: if a combination of Supreme Court holdings "necessarily

dictate retroactivity of the new rule." 533 U.S. at 666. That is what *Moore I*, *Moore

II*, and *Atkins* dictate, to a tee. *See also Penry v. Lynaugh*, 492 U.S. 302 (1989) ("if

we held as a substantive matter, that the Eighth Amendment prohibits the execution

of mentally retarded persons . . . , such a rule would fall under the first exception to

the general rule of nonretroactivity, and would be applicable to defendants on

collateral review.").

### 2. *Moore* was unavailable to Burton.

The State argues that Mr. Burton should have brought his Eighth Amendment

claim sooner, at the latest within a year of *Moore*. This argument concerns the State's

possible statute of limitations defense. *See* Opposition at pp. 8, 10 (explicitly

invoking § 2244(d)(1)). For the reasons argued in Mr. Burton's Motion, that fact-

bound inquiry is not proper for consideration of § 2244(b)(3)(C).

The question of unavailability under § 2244(b)(2)(A) is different. The statute requires only that a rule have been "previously unavailable," *i.e.* at the time of "a prior application[.]" § 2244(b)(2). *See also In re Johnson*, 935 F.3d at 294 (authorizing *Atkins/Moore* claim years after the new rule became available); *In re Cathey*, 857 F.3d at 233 n.75 (§ 2244(b)(2)(A) does not require determination of when precisely a claim became available, but "only requires that the constitutional rule was 'previously unavailable' at the time of [the] initial habeas filing.").

## III. ALTHOUGH NOT REQUIRED, MR. BURTON HAS MADE A PRIMA FACIE SHOWING OF INTELLECTUAL DISABILITY AND THAT THE TEXAS COURT OF CRIMINAL APPEALS UNREASONABLY APPLIED (OR FAILED TO APPLY) *MOORE* TO HIS *ATKINS* CLAIM. THE STATE'S ARGUMENTS TO THE CONTRARY ARE BASED ON A MISAPPLICATION OF CURRENT CLINICAL STANDARDS.

As previously argued, at the authorization stage Mr. Burton is not required to make a prima facie showing of the underlying merits of his claim, including a prima facie showing that he has satisfied an exception to the relitigation bar under 28 U.S.C. § 2254(d). Motion for Authorization at 21-25. Nonetheless, Mr. Burton has made a prima facie showing on the merits, based on the allegations in his proposed habeas application and the attached evidentiary proffers.

At the outset, the State improperly asks this Court to consider a letter from an "expert"[7] that purportedly "discount[s]" and "rebut[s]" Mr. Burton's allegations

_____

[7] The letter is unaccompanied by a curriculum vitae or any other information regarding the author's

regarding his intellectual disability. The State is essentially asking this Court to engage in a "battle the experts"—a fact-bound inquiry that is completely inappropriate at this stage.[8]

Moreover, the State's arguments rest on outdated or inapplicable caselaw, as well as a misapplication of or disregard for the medical community's diagnostic framework. For example, the State relies on pre-*Moore* Texas caselaw suggesting IQ scores may *not* be adjusted for the Flynn Effect, Opposition, at 24-25, even though the medical community now mandates recognition of the Flynn Effect. *See*, *e.g.*, DSM-5-TR, at 38.[9]

The State further argues that Mr. Burton cannot satisfy the adaptive deficits requirement for an ID diagnosis because his expert administered only a "single" standardized adaptive behavior instrument. Opposition, at 26. While the State cites to the DSM-5-TR, the State misleadingly omits the manual's instruction that an

---

qualifications and experience diagnosing intellectual disability.

[8] If anything, the opinions in the letter contravene the medical community's diagnostic framework and best practices for diagnosing ID, and thus, further demonstrate that the State's position rests on a disregard for current clinical standards. As just one of several examples, the letter relies heavily on Mr. Burton's functioning in prison—despite *Moore I*'s and the clinical standards' clear admonition that adaptive functioning is difficult to assess "in a controlled setting." *Moore I*, 581 U.S. at 16 (quoting DSM-5, at 38).

[9] The State further argues, without citing any clinical or medical authority, that an IQ score-range higher than 65-75 precludes an ID diagnosis, even though current medical standards do not impose a specific cutoff score and instead recognize that persons with IQ scores higher than 65-75 may qualify for a diagnosis. *Compare* Opposition, at 22-23 *with* DSM-5-TR, at 38.

assessment of adaptive behavior is based both on standardized measures *and* clinical evaluation, and that additional relevant sources should also be consulted. DSM-5-TR, at 42. As Mr. Burton's proposed habeas application demonstrates, his expert relied on multiple sources, including the results of a standardized adaptive behavior instrument.

A review of Mr. Burton's factual allegations and evidentiary proffers in his proposed application demonstrates that he has made a prima facie case of intellectual disability based on current medical and clinical standards. The State's arguments only highlight its disagreement about the controlling standards for diagnosing ID (a disagreement that was already resolved in favor of current medical standards in *Moore I*), and this Court need not and should not consider those arguments at this stage of the proceedings.

Although not required, Mr. Burton has also made a prima facie showing that the TCCA's resolution of his claim was unreasonable.[10] The TCCA effectively found that Mr. Burton failed to raise a prima facie *Moore* claim, despite presenting two qualified expert opinions that he is intellectual disabled under current medical standards, and despite no opposing expert opinion *nor even any briefing in opposition* from the State. In light of the total absence of any expert opinion, proffer,

---

[10] The State concedes that the TCCA's ruling must be considered a merits ruling. Opposition, at 20-21.

or assertion to the contrary, there is no way to view the TCCA's opinion other than an unreasonable application of *Moore*—if not an outright refusal to apply *Moore.* Indeed, the day before the TCCA dismissed Mr. Burton's claim, four members of the TCCA signed onto a published concurring opinion rejecting the holdings of *Moore I* and *Moore II*, arguing that "the clinical standards for intellectual disability do not line up with the national consensus about cruel and unusual punishment." *Ex parte Milam*, No. WR-79,322-04 (Tex. Crim. App. July 31, 2024) (concurring opinion of Keller, P.J., Yeary, Keel and Slaughter, JJ) (designated for publication). Accordingly, Mr. Burton has made a prima facie showing that, in dismissing his claim, the TCCA unreasonably applied *Moore*, or failed to apply it altogether.

## IV.  IF TIMELINESS IS TO BE CONSIDERED AT THE AUTHORIZATION STAGE, IT REQUIRES ONLY A PRIMA FACIE SHOWING.

The parties disagree as to whether timeliness may be considered at this stage. Timeliness—a defense the State may raise under Section 2244(d) if Mr. Burton's federal claim is authorized—is a very fact-specific matter that requires record development of equitable tolling and/or miscarriage of justice considerations in the District Court.

If timeliness is to be considered at all at this point in the proceedings, all that should be required of Mr. Burton is a prima facie showing that equitable tolling should apply. Mr. Burton makes that prima facie showing by asserting in his Motion

that he is intellectually disabled and thus categorically excluded from the death penalty; and that his federally appointed counsel abandoned him in 2014. Motion at 25-28. As in *In re Campbell*, authorization is appropriate on this prima facie showing of a "viable basis for equitable tolling that merits further factual development." 750 F.3d 523, 533 (5th Cir. 2014).

Dated: August 4, 2024

Respectfully submitted,

*/s/ Kathryn A. Johnson*

**Kathryn A. Johnson**
State Bar No. 0390539*
johnson.kate@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600(main)
(612) 340-2868(facsimile)

*Attorneys for Petitioner Arthur Lee Burton*

# CERTIFICATE OF COMPLIANCE

I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,897 (less than 15,000) words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: August 4, 2024

/s/ Kathryn A. Johnson

**Kathryn A. Johnson**
State Bar No. 0390539*
johnson.kate@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600(main)
(612) 340-2868(facsimile)

*Attorneys for Petitioner Arthur Lee Burton*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on August 4, 2024.

I certify that all participants were served via the CM/ECF system and email. The names and addresses of the persons served are:

Office of the Texas Attorney General
Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548

**Edward Marshall**
Chief, Criminal Appeals Division
Edward.Marshall@oag.texas.gov

**Tomee Heining**
Deputy Chief, Criminal Appeals Division
Tomee.Heining@oag.texas.gov

*/s/ Kathryn A. Johnson*

**Kathryn A. Johnson**
State Bar No. 0390539*
johnson.kate@dorsey.com
**DORSEY & WHITNEY LLP**
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 340-2600(main)
(612) 340-2868(facsimile)